Richard D. McCune, State Bar No. 132124
rdm@mccunewright.com
David C. Wright, State Bar No. 177468
dcw@mccunewright.com
Steven A. Haskins, State Bar No. 238865
sah@mccunewright.com
Mark I. Richards, State Bar No. 321252
mir@mccunewright.com
**McCune Wright Arevalo LLP**
3281 Guasti Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Benjamin L. Bailey (Pro Hac Vice)
bbailey@baileyglasser.com
Eric B. Snyder (Pro Hac Vice)
esnyder@baileyglasser.com
Jonathan D. Boggs (Pro Hac Vice)
jboggs@baileyglasser.com
**Bailey & Glasser LLP**
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555

Arthur H. Bryant, State Bar No. 208365
abryant@baileyglasser.com
Todd A. Walburg, State Bar No. 213063
twalburg@baileyglasser.com
**Bailey & Glasser LLP**
1999 Harrison Street, Suite 660
Oakland California 94612
Telephone: (510) 272-8000
Facsimile: (510) 463-0291

Additional Counsel Listed on Signature Page
Attorneys for Plaintiffs and the Putative Class

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| INKIE LEE; WAYNE SALLURDAY; LORI SALLURDAY; ANANDHI BHARADWAJ; SARGON DANIEL; STEPHANIE GLEASON; LAVERNE JACKSON; SANDY XIA; NISSIM AHRONEE; SANJAY CHOPRA; EDWIN ARROYAVE; MICHAEL CURLEY; WILLIAM DOYLE; ROBERT GUCWA; JAVIER GUZMAN; SUSAN HUTCHESON; MACE RAKESTRAW; RODRIGO RODRIGUEZ; HASNIN SYED; YUFEI WU; WENDY HENSEL; JOSEPH TYSON; and YUXIANG ZHANG; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v. | Case No. 2:20-cv-00570-JVS-KES<br><br>Judge Assigned: Hon. James V. Selna<br><br>**PLAINTIFFS' OPPOSITION TO DEFEDANT'S MOTION TO COMPEL CERTAIN PLAINTIFFS TO INDIVIDUAL ARBITRATION AND DISMISS CLAIMS**<br><br>**Date:** September 21, 2020<br>**Time:** 1:30 a.m.<br>**Courtroom:** 10C |

TESLA, INC. and Does 1 through 10, inclusive,

Defendants.

# TABLE OF CONTENTS

*Page*

TABLE OF CONTENTS ................................................................................................ i

I      INTRODUCTION ......................................................................................... 1

II     PROCEDURAL BACKGROUND .............................................................. 2

    A.     Plaintiffs for Whom Tesla Is Not Seeking to Compel Arbitration ............. 4

    B.     The Arbitration Provisions ......................................................................... 4

        1.     Consumer Arbitration Rules ............................................................. 5

        2.     Arbitrator Cannot Hear Class and Representative Claim and Requests for Relief on Behalf of Others Purchasing or Leasing Tesla Vehicles ................................................................... 6

        3.     Severability of Claims for Injunctive and Declaratory Relief .......... 6

III    ARGUMENT ................................................................................................ 7

    A.     The Alleged Waivers of Plaintiffs' Claims for Public Injunctive Relief Are Against Public Policy and Cannot Be Enforced ................................... 7

        1.     California Law Forbids the Parties from Waiving a Consumer's Right to Seek Public Injunctive Relief ............................................. 8

        2.     Other States Also Forbid Consumers From Waiving Claims For Public Injunctive Relief ................................................................... 9

            a.     Florida ................................................................................... 9

            b.     Washington .......................................................................... 10

            c.     Oregon ................................................................................. 11

            d.     Georgia ................................................................................ 11

            e.     Pennsylvania ....................................................................... 12

            f.     Texas ................................................................................... 13

        3.     Each Plaintiff's Contract Bars Plaintiff from Seeking Public Injunctive Claims in any Forum ...................................................... 14

i

# TABLE OF CONTENTS (cont.)

*Page*

B.      This Court Should Proceed with the Litigation Regardless of How It
        Decides the Motion ...................................................................... 18

IV      CONCLUSION................................................................................ 19

Pls.' Opp'n to Def.'s Mot. to Compel Arbitration
Case No. 2:20-cv-00570-JVS-KES

# TABLE OF AUTHORITIES

***Page(s)***

Cases

*Blair v. Rent-A-Center, Inc.*,
928 F.3d 819 (9th Cir. 2019) ...............................................................9, 14, 15, 17

*Cannon v. Wells Fargo Bank N.A.*,
917 F. Supp. 2d 1025 (N.D. Cal. 2013) ...............................................................15

*Coastal Caisson Drill Co. v. Am. Cas. Co.*,
523 So. 2d 791 (Fla. App. 1988) ...........................................................................10

*Cottrell v. AT&T Inc.*,
No. 19-cv-07672-JCS, 2020 WL 2747774 (N.D. Cal. May 27, 2020) ...................9

*Davis v. Powertel, Inc.*,
776 So.2d 971 (Fla. App. 2000) ............................................................................10

*Day v. AT&T Corp.*,
63 Cal. App. 4th 325 (1998) ..................................................................................17

*Dornaus v. Best Buy Co.*,
No. 18-CV-04085-PJH, 2019 WL 632957 (N.D. Cal. Feb. 14, 2019).......14, 17, 18

*Erskine v. Upham*,
132 P.2d 219 (Cal. App. 1942) .............................................................................12

*Grandview Inland Fruit Co. v. Hartford Fire Ins. Co.*,
66 P.2d 827 (Wash. 1937) ....................................................................................11

*Hall v. Amica Mut. Ins. Co.*,
538 Pa. 337, 648 A.2d 755 (1994)....................................................................13, 14

*Hess v. Ford Motor Co.*,
27 Cal. 4th 516 (2002) ..........................................................................................17

*Holt v. O'Brien Imports of Fort Myers*, Inc.,
862 So. 2d 87 (Fla. App. 2003) ............................................................................10

*In re Ambrose*,
568 B.R. 716 (Bankr. N.D. Ga. 2017)..............................................................12, 13

*In re Leisure*,
82 P.3d 144 (Or. 2003) ..........................................................................................11

*In re Ocwen Loan Serv., LLC Mortg. Serv. Litig.*,
491 F.3d 638 (7th Cir. 2007)................................................................................15

iii

# TABLE OF AUTHORITIES (cont.)

*Page(s)*

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) .......................................................................................17

*In re: FCA US LLC Monostable Electronic Gearshift Litig.*,
   355 F. Supp. 3d 582 (E.D. Mich. 2018) .......................................................12

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ........................................................................................17

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017) ..............................................................................7, 8, 9, 16

*Olosoni v. HRB Tax Grp.*,
   No. 19-cv-03610-SK, 2019 WL 7576680 ......................................................9

*Rogers v. Lyft, Inc.*,
   --- F. Supp. 3d ---, 2020 WL 1684151 (N.D. Cal. Apr. 7, 2020) ................9

*Sandquist v. Lebo Auto., Inc.*,
   1 Cal. 5th 233 (2016) ...........................................................................................19

*Scott v. Cingular Wireless*,
   161 P.3d 1000 (Wash. 2007) ...........................................................................10

*Shoreline Cmty. Coll. Dist. No. 7 v. Emp. Sec. Dept.*,
   842 P.2d 938 (Wash. 1992) .............................................................................11

*Sloan v. Thompson*,
   115 P.3d 1009 (Wash. App. 2005) .................................................................11

*Tucker v. Pac. Bell Mobile Servs.*,
   208 Cal. App. 4th 201 (2012) .........................................................................17

*Weigel v. Ron Tonkin Chevrolet Co.*,
   690 P.2d 488 (Or. 1984) ...................................................................................11

*Wolf v. Walt Disney Pictures & Television*,
   162 Cal. App. 4th 1107 (2008) ......................................................................17

Statutes

Cal. Bus. & Prof. Code § 17200 ...........................................................................8

Cal. Bus. & Prof. Code § 17500 ...........................................................................8

Cal. Civ. Code § 1750 ...............................................................................................8

Cal. Civ. Code § 3513 ...........................................................................................8, 9

iv

1

### TABLE OF AUTHORITIES (cont.)

2

*Page(s)*

3   Fla. Stat. § 501.211 ................................................................................................10

4   Ga. Code § 10-1-373 ..............................................................................................12

5   Or. St. § 646.638 ....................................................................................................11

6   Tex. Bus. & Com. Code § 17.41 .............................................................................13

7   Tex. Bus. & Com. Code § 17.42 .............................................................................14

8   Texas Business and Commerce Code § 17.50 ........................................................13

9   Rules

10   Fed. R. Civ. P. 8(a)................................................................................................15

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I        INTRODUCTION

Faced with allegations that its vehicles exhibit uncommanded full power acceleration while in the process of parking, or otherwise moving at slow speed, in a manner posing a grave threat to human life, Defendant Tesla, Inc. responds by moving to compel arbitration for a majority of, but not all, Plaintiffs' claims. In doing so Defendant, a company Forbes once described as "transforming the auto industry," has chosen to defend this action in traditional corporate fashion by 1) blaming the driver for each of hundreds of documented instances of uncommanded full power acceleration, and 2) coupling arbitration agreements with class action waivers to ensure that any legal assertion of product defects is both economically and procedurally unfeasible. *See* Katherine V.W. Stone and Alexander J.S. Colvin, *The Arbitration Epidemic*, Economic Policy Institute Briefing Paper (2015) ("Composite arbitration–class-action waivers have become common in contracts offered by credit card companies, banks, cell phone providers, and providers of other common services.").

Defendant asserts that Plaintiffs "*agreed* to resolve their disputes with Tesla only in individual arbitration," but this is a fiction Tesla reserves for the Court.  Not one Plaintiff affirmatively agreed to this arbitration agreement with its class action waiver. Rather, Tesla included the provision in a "consumer agreement" requiring consumers to mail notice of intent to opt out within 30 days of accepting the contract. Indeed, Tesla specified in its arbitration provision that disputes would be resolved "by a single arbitrator administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules." (Decl. of Jasjit Ahluwalia, Dkt No. 44-35, Ex. 5, at 33.) Significantly, the AAA defines a consumer agreement as:

> an agreement between an individual consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and *where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable* in most or all of its terms, conditions, features, or choices.

American Arbitration Association, Consumer Arbitration Rules (2014). Nevertheless, Ninth Circuit courts generally hold that the existence of the 30-day opt out period

1

precludes a finding of procedural unconscionability and uphold class action waivers within arbitration agreements.

But Tesla goes too far in seeking to have the Court dismiss *all* of Plaintiffs' claims to arbitration. Tesla acknowledges, as it must, that under California law the right of plaintiffs to seek public injunctive relief cannot be waived. But Tesla fails to acknowledge that by one means or another, the laws of Florida, Washington, Oregon, Georgia, Pennsylvania, and Texas also prohibit consumer waivers of public injunctive relief. Instead, Tesla contends—without support in published case law—that even in the case of Plaintiffs' claims for public injunctive relief, this Court must defer to the liability findings of multiple private arbitrators. This procedure is not only contrary to law, it is impractical, inconsistent with established public policies, and puts the public at significant risk of catastrophic injury or death.

Indeed, this is a prototypical case illustrating why legislatures and courts have established public policies forbidding consumers from waiving claims for public injunctive relief. When this litigation was filed in January 2020, there had been 101 complaints of sudden uncommanded acceleration under nearly identical circumstances since 2013. By the time the Second Amended Complaint (the SAC) was filed six months later, there were 192 complaints. And in the six weeks since the SAC's filing, Plaintiffs' counsel has learned of four more identical sudden uncommanded acceleration incidents. It is precisely because Tesla is attempting to delay and obfuscate the threat its vehicles pose to public safety that this Court should enforce consumer protection laws for the general public's benefit and safety. The Court should not delegate this important function to private arbitration rules that are devoid of the right to discovery, rules of evidence, and appellate review. The law requires that Tesla be held to answer Plaintiffs' allegations in this forum.

## II    PROCEDURAL BACKGROUND

The central defect Plaintiffs allege in the SAC is that Tesla vehicles often experience surprise, instant full power acceleration when moving slowly or completely

stopping. This phenomenon most often occurs while the driver is in the process of parking, but is not caused by the driver commanding the vehicle's acceleration by pressing on the accelerator pedal. The surprise acceleration results in the vehicle colliding with whatever structures or objects (or, inevitably, people) happen to be in front of it.

To understand just how serious and pervasive a problem this is, one need only look at the reported instances of sudden uncommanded acceleration in Tesla vehicles compared to historical averages reported from all vehicles. As the SAC alleges, a NASA study of unintended acceleration reports to the National Highway Traffic Safety Administration (NHTSA) from 2000 to 2010 found that the average rate of SUA incidents among all vehicles on the road in the United States was 1 per 100,000 vehicles per year. From the 8-year period of 2013 through 2019, Tesla is reported to have sold 543,540 vehicles. (*See* Corrected Second Amended Compl., Dkt. No. 43, ¶¶ 85-95.) Even if one assumed that all 543,540 Tesla vehicles had been operating during that 8-year period, NHTSA would have predicted, on average, only 5.4 annual complaints (or 43 total) of sudden uncommanded acceleration in Tesla vehicles. In fact, during that same period, NHTSA received 192 sudden uncommanded acceleration complaints—nearly five times the expected result. Now factor in that Tesla has sold half those vehicles just since 2018, and that the sudden uncommanded acceleration occurrences actually reported to NHTSA constitute only a fraction of the total number of occurrences overall, and it becomes clear that this extremely dangerous condition is all too prevalent in Tesla vehicles. In fact, they experience sudden uncommanded full power acceleration at well over 10 times the expected historical rate—with each such instance potentially threatening grave physical injury or death.

The twenty-four Plaintiffs named in this litigation have each experienced sudden uncommanded acceleration in their Tesla vehicles, all but one resulting in a collision. These Plaintiffs represent putative classes of Tesla owners and lessees from 11 states.

Pls.' Opp'n to Def.'s Mot. to Compel Arbitration
Case No. 2:20-cv-00570-JVS-KES

**A.      Plaintiffs for Whom Tesla Is Not Seeking to Compel Arbitration**

Tesla does not seek to compel arbitration of the claims of the following six Plaintiffs who purchased or leased a Tesla vehicle before Tesla began inserting arbitration provisions into its standard order and purchase agreements:

- Yufei Wu (California)
- Sanjay Chopra (Arizona)
- Helen Whatmough (Arizona)
- William Doyle (Massachusetts)
- Laverne Jackson (New Jersey)
- Hasnin Syed (Texas)

Therefore, regardless of the Court's ruling on the instant motion, this litigation will proceed in this Court for these Plaintiffs, the putative National Class, and the putative sub-classes comprised of Tesla owners in California, Arizona, Massachusetts, New Jersey, and Texas.

**B.      The Arbitration Provisions**

Up until 2016, Tesla did not attempt to bind its customers to settling disputes through private confidential arbitration, nor require that its customers waive their rights to seek relief through class action litigation. But eventually Tesla followed the examples of credit card companies, banks, and cell phone providers by inserting a mandatory arbitration clause in the model order agreements and model purchase contracts.

The provisions pertinent to the issues addressed herein are the following:

- "If not resolved within 60 days, you agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules."
- "The arbitrator may only resolve disputes between you and Tesla, and may not consolidate claims without the consent of all parties. The arbitrator

cannot hear class or representative claims or requests for relief on behalf of others purchasing or leasing Tesla vehicles. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action."

- "If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy (such as injunctive or declaratory relief), then that claim or remedy (and only that claim or remedy) shall be severed and must be brought in court and any other claims must be arbitrated.

(*See* Ahluwalia Decl., Dkt No. 44-35, Ex. 5, at p. 33.)

### 1.    Consumer Arbitration Rules

The arbitration provisions Tesla seeks to enforce specify that disputes must be resolved by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules. This is significant because AAA's Consumer Arbitration Rules do not ensure the ability of a party to seek discovery, as exists in state and federal courts. Rather, the Consumer Arbitration Rules provide:

R-22. Exchange of Information between the Parties

(a) If any party asks or if the arbitrator decides on his or her own, keeping in mind that arbitration must remain a fast and economical process, the arbitrator may direct

1) specific documents and other information to be shared between the consumer and business, and

2) that the consumer and business identify the witnesses, if any, they plan to have testify at the hearing.

(b) Any exhibits the parties plan to submit at the hearing need to be shared between the parties at least five business days before the hearing, unless the arbitrator sets a different exchange date.

(c) **No other exchange of information beyond what is provided for in section (a) above is contemplated under these Rules**, unless an arbitrator determines further information exchange is needed to provide for a fundamentally fair process.

(d) The arbitrator has authority to resolve any disputes between the parties about exchanging information.

5

American Arbitration Association, Consumer Arbitration Rules, Rule 22.

As the Consumer Finance Protection Bureau explained in a 2015 report to Congress:

> [L]imited discovery rights are the hallmark of arbitration. Arbitration rules on discovery (often called the "exchange of information") ordinarily do not track the detailed discovery provisions nor the broad scope of discovery under the Federal Rules of Civil Procedure, and generally envision less discovery than would be available in court. . . .
>
> Arbitration rules on discovery do not allow for broad discovery from third parties, which were not parties to the underlying agreement to arbitrate disputes.

Consumer Financial Protection Bureau, *Arbitration Study* (March 2015).

### 2.   Arbitrator Cannot Hear Class and Representative Claims and Requests for Relief on Behalf of Others Purchasing or Leasing Tesla Vehicles

The arbitration provision expressly prohibits an arbitrator from hearing "class or representative claims or requests for relief on behalf of others purchasing or leasing Tesla vehicles." (*See* Ahluwalia Decl., Dkt No. 44-35, Ex. 5, at p. 33.) Therefore, as will be discussed in greater detail below, the contract expressly forbids the arbitrator from hearing not only claims asserted on behalf of the putative class members, but also Plaintiffs' claims for public injunctive relief. Contrary to Tesla's assertion that the arbitrator should be allowed to decide issues of liability under the consumer protection statutes through which Plaintiffs are seeking public injunctive relief, its own arbitration provisions expressly preclude the arbitrator from hearing such "claims or requests for relief."

### 3.   Severability of Claims for Injunctive and Declaratory Relief

Finally, the Tesla arbitration provision contains a severability clause that expressly provides that "[i]f a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy (such as injunctive or declaratory relief), then that claim or remedy (and only that claim or remedy) shall be severed and must be brought in court and any other claims must be arbitrated." (*See*

Pls.' Opp'n to Def.'s Mot. to Compel Arbitration
Case No. 2:20-cv-00570-JVS-KES

Ahluwalia Decl., Dkt No. 44-35, Ex. 5, at p. 33.) Significantly, this provision specifically refers to both "claims" and "requests for remedy."

## III    ARGUMENT

### A.    The Alleged Waivers of Plaintiffs' Claims for Public Injunctive Relief Are Against Public Policy and Cannot Be Enforced

Tesla anticipates several of Plaintiffs' arguments that their claims are not arbitrable because consumers cannot waive their right to seek public injunctive relief. But there are several flaws with Tesla's foreshadowing. First, it is not only the California Plaintiffs whose right to seek public injunctive relief cannot be waived by private contractual agreement. Tesla cites *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) with regard to California law, but fails to discuss the law of several other pertinent states that also forbid enforcement of such waivers. These additional states include Florida, Washington, Oregon, Georgia, Pennsylvania, and Texas. As a result, Plaintiffs Lee, Xia, Ahronee, Arroyave, Rodriguez, Wu, Gucwa, Hutcheson, Curley, Zhang, Guzman, Rakestraw, Bharadwaj, Hensel, Sallurday, Sallurday, and Gleason are all entitled to bring claims for public injunctive relief in this court.

Tesla does not bother to argue that *McGill* does not apply to the California Plaintiffs' claims—because it does—but instead argues that even if "*McGill* does apply to certain requested remedies," Plaintiffs must "arbitrate the initial question of liability on all their claims." Tesla cites an unpublished Northern District of California case for this premise, ignoring that this case—like all arbitration cases—is governed by the plain language of the arbitration clause in this case, not some other. And when the Court reviews the arbitration provision in this case, it will see that the parties unambiguously agreed that a "claim" that is unenforceable in court should be "severed and must be brought in court," as opposed to just the underlying injunctive remedy being pursued in court.

### 1.    California Law Forbids the Parties from Waiving a Consumer's Right to Seek Public Injunctive Relief

The California Plaintiffs allege that Tesla has violated the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, and California's false advertising law, Cal. Bus. & Prof. Code § 17500). The statutory remedies for all three of these laws include the possibility of public injunctive relief, i.e., injunctive relief with the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public. In *McGill*, the California Supreme Court analyzed an arbitration clause in which the plaintiffs brought similar claims but had entered into an arbitration clause with the defendant that forbade any of the plaintiffs from seeking anything but individual relief. *McGill*, 2 Cal. 5th at 956. The governing arbitration clause in *McGill* provided that all claims had to be "brought in the name of an individual person or entity" and that the arbitrator could not issue relief on anything other than an "individual" basis. *Id.* at 952.

After confirming that the *McGill* plaintiffs could seek public injunctive relief under the applicable statutes, the *McGill* court turned to the question of whether the plaintiffs could waive those claims. But pointing to California Civil Code § 3513, the *McGill* court confirmed that California statutory law forbade the parties from entering into a contractual waiver because California forbids "a law established for a public reason" from being "contravened by a private agreement." Because the public injunctive relief sought under the relevant statutes is primarily "for the benefit of the general public," the *McGill* plaintiffs could not agree to waive away their right to seek that relief. *Id.* at 961 ("[T]he waiver in a predispute arbitration agreement of the right to seek public injunctive relief under these statutes would seriously compromise the public purposes the statutes were intended to serve."). The *McGill* court then held that the Federal Arbitration Act did not preempt the application of California Civil Code § 3513 to void the attempted waiver. *Id.* at 964. The Ninth Circuit has since confirmed *McGill*'s holdings. *See Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 822 (9th Cir. 2019). And several district courts have applied

the *McGill* rule to deny motions to compel arbitration governed by California law for similar reasons. *See Cottrell v. AT&T Inc*., No. 19-cv-07672-JCS, 2020 WL 2747774, at *5 (N.D. Cal. May 27, 2020) ("The arbitration agreement in this case, however, prevents an arbitrator from awarding public injunctive relief . . . ."); *Rogers v. Lyft, Inc*., --- F. Supp. 3d ---, 2020 WL 1684151, at *8 (N.D. Cal. Apr. 7, 2020) ("The arbitration agreement's prohibition on public injunctions is therefore unenforceable."); *Olosoni v. HRB Tax Grp*., No. 19-cv-03610-SK, 2019 WL 7576680, at *4 ("[T]he statutory schemes set out in 'the UCL, the CLRA, and the false advertising law' are explicitly designed to provide for 'public injunctive relief' that is 'by definition' 'primarily for the benefit of the general public.'") (quoting *McGill*, 2 Cal. 5th at 961).

## 2. Other States Also Forbid Consumers From Waiving Claims For Public Injunctive Relief

Tesla all but concedes that the California Plaintiffs' claims for public injunctive relief must be heard in court, but it asserts that none of the other Plaintiffs have the same rights. But the law of most of the states governing Plaintiffs' claims leads to the same result as *McGill* does in California law.[1]

### a. Florida

Florida Plaintiffs Gucwa and Hutcheson can also bring their public injunctive claims in this Court under the same logic as the California Supreme Court employed in *McGill*. The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) allows individual consumers to seek injunctive relief for the benefit of the public. *See* Fla. Stat. § 501.211 ("Without regard to any other remedy or relief to which a person is entitled,

---

[1]  The choice of law provision in the Tesla contracts provides that the Agreement is governed and interpreted by the laws of the Plaintiffs' home states.  (*See e.g.,* Decl. of Jasjit Ahluwalia, Dkt No. 44-31, Ex. 1 (Motor Vehicle Order Agreement), at p. 15 ("The terms of this Agreement are governed by, and to be interpreted according to, the laws of the State in which we are licensed to sell motor vehicles that is nearest to your address indicated on your Vehicle Configuration."); and Ex. 4 (Motor Vehicle Purchase Agreement) (same).)

9

anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating or is otherwise likely to violate this part."); *Davis v. Powertel, Inc*., 776 So.2d 971, 974 (Fla. App. 2000) ("The Act is designed to protect not only the rights of litigants, but also the rights of the consuming public at large. . . . It follows that an aggrieved party may pursue a claim for declaratory or injunctive relief under the Act, even if the effect of those remedies would be limited to the protection of consumers who have not yet been harmed by the unlawful trade practice."). Florida law also holds that "[a]ny attempt to limit FDUTPA liability is contrary to public policy." *Holt v. O'Brien Imports of Fort Myers*, *Inc*., 862 So. 2d 87, 89 (Fla. App. 2003). Indeed, Florida law holds that an individual "cannot waive the protection of a statute that is designed to protect both the public and the individual." *Id.* (citing *Coastal Caisson Drill Co. v. Am. Cas. Co*., 523 So. 2d 791, 793 (Fla. App. 1988), *aff'd*, 542 So. 2d 957 (Fla. 1989)). Florida law thus permits Plaintiffs to pursue their clams in this court.

### b. Washington

The same is true for Washington Plaintiff Zhang. The Washington Consumer Protection Act (WCPA) authorizes individual consumers to seek injunctive relief. *See Scott v. Cingular Wireless*, 161 P.3d 1000 (Wash. 2007) ("Consumers bringing actions under [the WCPA] do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interest."). Indeed, the WCPA requires that a properly alleged claim have some affect on the public interest. *See Sloan v. Thompson*, 115 P.3d 1009 (Wash. App. 2005). And Washington law confirms it is "well settled" that "an individual may not waive a right where such a waiver violates public policy." *See Shoreline Cmty. Coll. Dist. No. 7 v. Emp. Sec. Dept*., 842 P.2d 938, 947 (Wash. 1992). Indeed, "the requirements of a statute enacted for the public good may not be nullified or varied by contract." *Id.* (citing *Grandview Inland Fruit Co. v. Hartford Fire Ins. Co*., 66 P.2d 827 (Wash. 1937)). Again,

this is the same reasoning the California Supreme Court employed in *McGill* to forbid waiver of a claim for public injunctive relief.

### c.   Oregon

Oregon Plaintiff Curley is also entitled to seek public injunctive relief in this Court because Oregon follows the same logic as Washington. First, the Oregon Unfair Trade Practices Act provides that an Oregon resident with standing may bring an "individual action in an appropriate court," and that court may "provide any equitable relief the court considers necessary or proper." Or. St. § 646.638. The Oregon Supreme Court has established that the statute's private right of action is "designed to encourage private enforcement of the prescribed standards of trade and commerce in aid of the act's public policies as much as to provide relief to the injured party." *Weigel v. Ron Tonkin Chevrolet Co.*, 690 P.2d 488, 494 (Or. 1984). The same court has also held that under Oregon law, "statutory rights may be waived, but only to the extent that they serve no broader public policy but are directed solely to the protection of the individual who purports to waive them." *In re Leisure*, 82 P.3d 144, 1458 (Or. 2003). This is the same formula as the courts in California, Florida, and Washington follow.

### d.   Georgia

Georgia Plaintiffs Bharadwaj and Hensel may also pursue public injunctive relief under Georgia law, again applying the California Supreme Court's logic in *McGill*. The Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") states that a "person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable."[2] Ga. Code § 10-1-373. Indeed, when automotive manufacturers like Tesla

---

[2] Although Plaintiffs do not specifically plead the GUDTPA, California courts permit parties seeking equitable relief to obtain that relief even if the statutory grounds for that relief are not artistically laid out in the complaint. The key consideration is whether the party seeking equitable relief has stated factual grounds for that relief, which Plaintiffs have. *See Erskine v. Upham*, 132 P.2d 219 (Cal. App. 1942) ("[W]hen a party comes into

utilize "band-aid" measures like the Obstacle-Aware acceleration algorithm that fail to truly address a defect, courts have held that a plaintiff's allegations sufficiently state grounds for an injunction under the GUDTPA. (*See, e.g.*, Corrected Second Amended Compl., Dkt No. 43, ¶ 101.) *See also In re: FCA US LLC Monostable Electronic Gearshift Litig.*, 355 F. Supp. 3d 582, 597 (E.D. Mich. 2018) (denying defendant's motion to dismiss GUDTPA claim where "the existence of an alleged defect, coupled with failed attempts at repairs, or 'band aid' fixes only, along with representations made after each repair that the vehicles are free from the defect, is sufficient to establish likely future harm resulting from similar unsatisfactory efforts by the defendant to skirt liability for the problem without an effective fix").

Georgia law also prohibits contracts that place the "public at risk for abusive behavior that would harm the public." *In re Ambrose*, 568 B.R. 716, 721 (Bankr. N.D. Ga. 2017). Although courts interpreting Georgia law have never considered whether the public's right to the protections afforded by the GUDTPA may be contracted away through arbitration provisions, those protections are plainly the sort that would threaten public well-being if contracted away. A keystone consideration in determining whether a contract infringes on the public's right is whether the "only parties who would be affected by th[e] provision are the contracting parties." *Id.* Here, Defendant seeks to deny the public the injunctive protection afforded by the GUDTPA through individual contracts, and to the extent those arbitration contracts seek to bar claims for public injunctive relief, they are void.

### e.   Pennsylvania

Pennsylvania Plaintiffs Sallurday, Sallurday, and Gleason are also entitled to pursue injunctive relief in this Court. The Pennsylvania Unfair Trade Practices and

---

a court of equity pleading facts which entitle him to some equitable relief, . . . notwithstanding the form of the pleading, [the court] will disregard the specific prayers in order to grant the relief which the proof warrants as within the equities of the entire case.").

Pls.' Opp'n to Def.'s Mot. to Compel Arbitration
Case No. 2:20-cv-00570-JVS-KES

Consumer Protection Law grants courts broad discretion to fashion relief for violations of the statute, including "award[ing] up to three times the actual damages sustained, but not less than one hundred dollars ($100), and . . . *provid[ing] such additional relief as it deems necessary or proper.*" 73 Pa. Stat. § 201-9.2 (emphasis added). Notably, the statute does not expressly preclude a court from issuing injunctive relief.

Additionally, Pennsylvania courts have recognized that contracts are unenforceable to the extent they undermine "statutory enactments." *Hall v. Amica Mut. Ins. Co.*, 538 Pa. 337, 347, 648 A.2d 755, 760 (1994).  Because Pennsylvania law authorizes private individuals to seek out and obtain an injunction for violations of Pennsylvania's consumer protection laws, the arbitration agreement is unenforceable to the extent it seeks to curtail that statutory right.

### f.      Texas

Finally, Texas Plaintiffs Guzman and Rakestraw may also pursue their right to seek public injunctive relief in this Court. In their case, the plain language of the Texas Deceptive Trade Practices and Consumer Protection Act (TDTPCPA) forbids Tesla from seeking the protections of the asserted contractual waiver. *See* Tex. Bus. & Com. Code § 17.41, *et seq.* Texas Business and Commerce Code § 17.50 permits a consumer to maintain a private right of action and permits any prevailing consumer with a successful claim to obtain "an order enjoining such acts or failure to act." In turn, the Texas Legislature expressly provides that "any waiver by a consumer" of any right provided for in the TDTPCPA is "contrary to public policy and is unenforceable and void," absent the existence of a series of requirements that do not exist here. Tex. Bus. & Com. Code § 17.42.

For example, a waiver of the TDTPCPA's provisions is enforceable only if the consumer is not in a "significantly disparate bargaining position." *Id.* Each of the contracts at issue here were contracts of adhesion presented to the Plaintiffs on a take-it-or-leave-it basis, and thus they had no opportunity to bargain at all. Nor is there any evidence that either Plaintiff was represented by legal counsel in purchasing their

Pls.' Opp'n to Def.'s Mot. to Compel Arbitration
Case No. 2:20-cv-00570-JVS-KES

vehicles, as the statute requires. *Id.* And there is no heading called "Waiver of Consumer Rights," nor a sufficient warning that either Plaintiff was waiving the specific rights the TDTPCPA grants them. *Id.*

### 3. Each Plaintiff's Contract Bars Plaintiff from Seeking Public Injunctive Claims in any Forum

Tesla argues that even if the *McGill* rule—as expressed in various ways by the state law described above—applies to Plaintiffs' claims, "it would not relieve Plaintiffs of the obligation to arbitrate the initial question of liability on all their claims." (Mot. at 19 (citing *Dornaus v. Best Buy Co*., No. 18-CV-04085-PJH, 2019 WL 632957, at *6 (N.D. Cal. Feb. 14, 2019)).) But what remains for this Court to decide is not the subject of an unpublished Northern District of California case analyzing a different contract, but the language of the contracts between Tesla and the Plaintiffs and controlling Ninth Circuit authority. Interestingly, although Defendant expressly acknowledges that this Court is bound by *Blair v. Rent-A-Center, Inc*., 928 F.3d 819 (9th Cir. 2019), with regard to the holding in *McGill* not being preempted by the FAA, Defendant fails to discuss that the *Blair* opinion also rejected the argument Tesla makes here that Plaintiffs must arbitrate the liability issues relating to their claims as a predicate to seeking public injunctive relief from the Court.

In *Blair,* as here, the defendant contended that the severance clause carved out only the potential public injunctive remedy available under the alleged consumer-protection causes of action, and that the parties had agreed to allow the arbitrator to adjudicate liability. In doing so, the defendant read "claim for relief" in the severance clause to refer only to a particular remedy, not to the entirety of the underlying claim. *Id.*at 831. The Ninth Circuit rejected this argument, as had the District Court, holding:

> The severance clause refers to "a particular claim for relief," but it then goes on to require, a few words later in the same sentence, severance of "that claim" from the arbitration in order to allow it to "be brought in court." A "claim for relief," as that term is ordinarily used, is synonymous with "claim" or "cause of action." *See, e.g.*, Fed. R. Civ. P. 8(a) (interchangeably using "claim" and "claim for relief," and using "demand for relief sought" to refer specifically to requested remedy); Claim,

14

> Black's Law Dictionary (10th ed. 2014) (noting that a "claim" is "[a]lso termed claim for relief"); Claim for relief, Black's Law Dictionary (10th ed. 2014) (referencing definition for "claim"); *In re Ocwen Loan Serv., LLC Mortg. Serv. Litig.*, 491 F.3d 638, 646 (7th Cir. 2007) ("The eighth claim is purely remedial; it seeks injunctive relief. Of course it is not a claim, that is, a cause of action, and should not have been labeled as such ...."); *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1031 (N.D. Cal. 2013) ("[E]quitable relief is not a claim for relief but rather only a remedy."). We read the clause, as did the district court, to provide that the entire claim be severed for judicial determination.

*Id.* at 831–32.

Here, as in *Blair*, in most cases, Tesla's contracts with the Plaintiffs explain that "you and Tesla may bring ***claims*** against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action." (*See, e.g.,* Ahluwalia Decl. Ex. 5, at p. 33 (emphasis added).) Those agreements then explain that "if a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy (such as injunctive or declaratory relief, then that claim or remedy (and only that claim or remedy) shall be severed and must be brought in court and any other claims must be arbitrated." (*Id.*)

The agreement here provides that either a "claim for relief *or* remedy" can be severed, but that does not change the result. Just as in *Blair*, the agreement is unenforceable as to a "particular claim for relief"—a claim for public injunctive relief. As such, that claim for public injunctive relief—synonymous with "claim" or "cause of action"—is what should be severed and heard by the Court.

Tesla attempts to focus the Court on the unpublished decision in *Dornaus*, but that Court took an overly narrow view of what Plaintiffs are entitled to do under California law in any event. The *McGill* court held that "the FAA does not require enforcement of a provision in a predispute arbitration agreement that, in violation of generally applicable California contract law, waives the right to seek in any forum public injunctive relief under the UCL, the CLRA, or the false advertising law." 2 Cal. 5th at 963. Tesla asserts that this limits a court's jurisdiction to issuing the injunctive remedy only.

But this position undermines *McGill*'s rationale in the first place. According to the *McGill* court, the public injunctive relief available under the relevant statutes is "to remedy a public wrong," not to "resolve a private dispute." *Id.* at 962. To suggest that waiving a "claim for public injunctive relief" somehow limits this Court to issuing the injunctive remedy after liability is decided constitutes a "serious[] compromise [of] the public purposes the statutes were intended to serve." *Id.* Put another way, every part of these consumer-oriented statutes was adopted to remedy wrongs that have a broad effect on the public, and thus a plaintiff cannot agree to carve off the public injunctive relief remedy alone in the manner Tesla suggests.

This analysis is consistent with the word "claim," just as the Ninth Circuit explained in *Blair*. Like the Ninth Circuit, the California courts consistently reference a "claim for injunctive relief" under the pertinent statutes as including all elements of the underlying UCL claim—not merely the injunctive remedy.[3] *See In re Tobacco II Cases*, 46 Cal. 4th 298, 312-313 (2009) (describing various elements of common-law fraud that are not required to "state a claim for injunctive relief under the UCL"); *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332-333 (1998); *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 230 (2012) (holding that plaintiffs failed to plead UCL claim for restitution but did plead UCL claim for classwide injunctive relief). This is also consistent with the interchangeability of the terms "claim" and "cause of action." *Blair*, 928 F.3d at 831-32.[4]

The *Dornaus* court also used the wrong standard when it came to interpreting the underlying contract. After analyzing the pertinent arbitration clause, it correctly held that the procedure for enforcing the agreement would be the "specific procedures contracted

---

[3] The California Supreme Court has called injunctive relief the "primary form of relief available under the UCL to protect consumers from unfair business practices." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011).

[4] What is implied for the California and other state Plaintiffs whose claims are described here is expressed without a doubt in Texas law. Because the Texas Plaintiffs' waivers do not satisfy Texas' statutory waiver requirements, they by definition retain all their rights to bring their claims, not just remedies.

16

to by the parties." *Dornaus*, 2019 WL 632957, at *3-4. But then when the *Dornaus* court discussed the underlying language of the contract, it held that the phrase "there can be no arbitration of a class or representative Claim" did not cover a "public injunctive relief remedy" because a "public injunctive relief remedy is not a class or representative claim." *Id.* The court cited *McGill* for that premise, but contracts are interpreted "to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." *Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 524 (2002). That intent is interpreted objectively. *See Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1126 (2008).

But the language of Tesla's arbitration agreement goes further than did the language in *Dornaus*. First, in *Dornaus*, the arbitration provision expressly provided that "all claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek." *Dornaus*, 2019 WL 632957, at *2. The district court observed that the limitation on arbitrability was only that "[c]laims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis [and] [t]he arbitrator . . . may only award relief on an individual basis." *Id.* Based on this language, the *Dornaus* court held that a claim for public injunctive relief did not include arbitration of a "representative claim" because the *McGill* court stated that a UCL claim is not a "representative action" and, therefore, the claim leading to public injunctive relief was subject to arbitration, but that the remedy was not. *Id.* at *6.

By contrast, Tesla's arbitration agreement provides not only that the arbitrator is not authorized to hear "class or representative claims or requests," but also, "requests for relief on behalf of others purchasing or leasing Tesla vehicles." (Ahluwalia Decl., Dkt No. 44-35, Ex. 5, at p. 33.) Furthermore, not only does the contract language expressly bar the arbitration of requests for relief on behalf of others, but it then goes on to specific cite "injunctive and declaratory relief" as an example of a "claim for relief or remedy" that "shall be severed and brought in court and *any other claims* must be arbitrated. (*Id.*)

17

This alone compels the result in *Blair* and distinguishes the instance case from what the district court held in *Dornaus*.

Moreover, Tesla's contract doesn't reference any legal definition of the word "representative"—the test is what an objective reader would have believed that word meant at the time he or she entered into the contract. The dictionary definition of "representative" is "someone who speaks or does something officially for another person or group of people."[5] At the very least, then, Tesla's contract is ambiguous regarding whether it intended to bar UCL claims for public injunctive relief as part of a "representative action." (Ahluwalia Decl., Dkt No. 44-35, Ex. 5.) And since the arbitration clause is at least ambiguous, it must be interpreted against Tesla as the drafter. *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 248 (2016) ("Where the drafter of a form contract has prepared an arbitration provision whose application to a particular dispute is uncertain, ordinary contract principles require that the provision be construed against the drafter's interpretation and in favor of the nondrafter's interpretation.")

Finally, even if this Court remains inclined to split the claims from the injunctive remedy for those Plaintiffs that signed a Tesla agreement, it cannot do so for those that signed the standard retail installment contract of their home states. Each of those contracts provides that "no arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration." (Ahluwalia Decl., Dkt No. 43-38, Ex. 8, at p. 47.) That language expressly disclaims the kind of preclusive effect of the arbitrator's rulings that Tesla now asserts.

**B.     This Court Should Proceed with the Litigation Regardless of How It Decides the Motion**

Regardless of how the Court decides Tesla's motion, there is no basis to either stay or dismiss the claims that this Court permits to proceed here. In the case of several Plaintiffs, Tesla has demonstrated no arbitration agreement at all. There is no basis for

---

[5] https://dictionary.cambridge.org/us/dictionary/english/representative

Pls.' Opp'n to Def.'s Mot. to Compel Arbitration
Case No. 2:20-cv-00570-JVS-KES

halting those claims, and doing so would unjustifiably extend Tesla's contractual arbitration agreement with the Plaintiffs. *See e.g.*, *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2017 WL 4551484, at *5 (N.D. Cal. Oct. 11, 2017)(declining to stay the claims of the non-arbitrating plaintiff while the remaining plaintiffs' claims proceeded through arbitration). And while the surviving claims resulting from this motion are all part of the same nucleus of operative facts as those of the Plaintiffs without arbitration clauses, the resolution of claims in the arbitral proceedings will have no bearing on the resolution of the claims with the Court. *See Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983, 990 (N.D. Cal. 2016) (rejecting the defendant's argument that staying the claims of the non-arbitrating plaintiffs was necessary to avoid a waste of judicial resources); *see also Lee v. Postmates Inc.*, No. 18-CV-03421-JCS, 2018 WL 4961802, at *12 (N.D. Cal. Oct. 15, 2018)(declining to stay the claims of the non-arbitrating plaintiffs while the remaining plaintiffs arbitrated their claims *inter alia* because it was not clear that doing so would prevent the risk of inconsistent outcomes). Accordingly, there is no good reason to stay the claims that will remain with the Court.

Furthermore, to force Plaintiffs to attempt to establish liability for the causes of action entitling Plaintiffs to public injunctive relief, given the almost total lack of discovery available in arbitration would itself subvert the policy objectives underlying the holding in *McGill* and *Blair*. And finally, Defendant offers no explanation as to how such an arbitration would even work, given that there are a number of states for which there would be multiple arbitration decisions, and high likelihood of inconsistent results. Not only is there no increase in efficiency by having the arbitrators decide the claims for public injunctive relief, it would actually create considerable inefficiency and confusion by forcing this Court to sort through arbitration proceedings that, in every instance, will be based on a far thinner factual record than would be the case if handled by this Court.

## IV    CONCLUSION

Neither the contracts Tesla entered into with Plaintiffs, nor any of the state laws discussed in this opposition, require this Court to take the narrow oversight over claims

for public injunctive relief that Tesla demands. For the reasons stated above, the motion to compel should be denied and this Court should proceed with the claims for public injunctive relief alleged by Plaintiffs Lee, Xia, Ahronee, Arroyave, Rodriguez, Wu, Gucwa, Hutcheson, Curley, Zhang, Guzman, Rakestraw, Bharadwaj, Hensel, Sallurday, Sallurday, and Gleason.

Dated August 24, 2020

Respectfully submitted,

MCCUNE WRIGHT AREVALO LLP

By: /s/ David C. Wright
David C. Wright

Richard D. McCune, State Bar No. 132124
rdm@mccunewright.com
David C. Wright, State Bar No. 177468
dcw@mccunewright.com
Steven A. Haskins, State Bar No. 238865
sah@mccunewright.com
Mark I. Richards, State Bar No. 321252
mir@mccunewright.com
MCCUNE WRIGHT AREVALO LLP
3281 Guasti Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Benjamin L. Bailey (Pro Hac Vice)
bbailey@baileyglasser.com
Eric B. Snyder (Pro Hac Vice)
esnyder@baileyglasser.com
Jonathan D. Boggs (Pro Hac Vice)
jboggs@baileyglasser.com
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555

Arthur H. Bryant, State Bar No. 208365
abryant@baileyglasser.com
Todd A. Walburg, State Bar No. 213063
twalburg@baileyglasser.com
BAILEY GLASSER LLP
1999 Harrison Street, Suite 660
Oakland, California 94612
Telephone: (510) 272-8000
Facsimile: (510) 463-0291

Donald H. Slavik (Pro Hac Vice)
dslavik@slavik.us

20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SLAVIK LAW FIRM, LLC**
2955 Village Drive, Suite 16
Steamboat Springs, Colorado 80487
Telephone: (970) 457-1011

Attorneys for Plaintiffs and the Putative
Class

Pls.' Opp'n to Def.'s Mot. to Compel Arbitration
Case No. 2:20-cv-00570-JVS-KES